UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
WARREN EVANS,

                         Plaintiff,

       -against-

BROOKLYN NAVY YARD DEVELOPMENT
CORPORATION and BROOKLYN NAVY YARD
COGENERATION PARTNERS, L.P.,

                     Defendants.
-----------------------------------------------------------------X
BROOKLYN NAVY YARD DEVELOPMENT
CORPORATION and BROOKLYN NAVY
YARD COGENERATION PARTNERS, L.P.,

                 Third-Party Plaintiffs,

       -against-

DELTAK CONSTRUCTION SERVICES, INC.,

               Third-Party Defendants.
-----------------------------------------------------------------X

REPORT AND
RECOMMENDATION

09 CV 5113 (RJD)(RML)

LEVY, United States Magistrate Judge:

          Third-party defendant Deltak Construction Services, Inc. ("Deltak"), moves to

dismiss the complaint against it pursuant to Fed. R. Civ. P. 12(b)(6). On September 21, 2011,

the Honorable Raymond J. Dearie, Senior United States District Judge, referred Deltak's motion

to me for a Report and Recommendation. On January 6, 2012, I heard oral argument on the

motion. (See Transcript, dated Jan. 6, 2012 ("Tr.").) At the oral argument, the parties agreed to

hold the motion in abeyance to enable Deltak to file a supplemental affidavit. (See Minute Entry,

dated Jan. 6, 2012.) As of February 29, 2012, the motion is fully briefed. For the reasons stated

below, I respectfully recommend that Deltak's motion be denied.

## BACKGROUND AND FACTS

A. <u>Basic Facts</u>

First-party defendants and third-party plaintiffs Brooklyn Navy Yard Development Corporation and Brooklyn Navy Yard Cogeneration Partners, L.P. (collectively, "third-party plaintiffs" or "Brooklyn") own the Brooklyn Navy Yard Cogeneration plant (the "Plant"). (<u>See</u> Summons and Verified Complaint, dated Oct. 3, 2008 ("First-Party Compl."), ¶ 18.) Beginning on or before 2004, Brooklyn was the general contractor and construction manager for a construction and/or renovation project at the Plant. (<u>See</u> <u>id.</u> ¶¶ 9–11.) On October 1, 2004, Brooklyn entered into a contract with Deltak (the "Contract") wherein Deltak was to perform the Design, Fabrication, Provision, and Installation of Replacement Heat Recovery Steam Generation Components for Units 1 and 2 at the Plant. (Affidavit of Thomas J. Colameo, Esq., sworn to July 21, 2010 ("Colameo Aff."), Ex. E.) The Contract included an indemnity clause.[1] Subsequent to the execution of the Contract, Deltak retained Nicholson & Hall as a subcontractor. (First-Party Compl. ¶ 22.) First-party plaintiff Warren Evans ("first-party plaintiff" or "Evans") was an employee of Nicholson & Hall. (<u>Id.</u>)

B. <u>Procedural Background</u>

In October 2008, Evans commenced an action against Brooklyn in New York State Supreme Court, Kings County. In his complaint, Evans claims that on October 31, 2005,

---

[1] The indemnity clause states in pertinent part that "[e]ach Party . . . agrees to defend, indemnify and hold harmless the other Party . . . from and against costs and expenses (including court costs, and reasonable attorney's fees), damages and liabilities incurred by or imposed upon the Indemnified party as a result of or in connection with claims, demands or suits for personal injury . . . resulting from or in connection with the Indemnifying Party's performance of its obligations under this Agreement." (Colameo Aff, Ex. E. ¶ 17.1.)

while performing work at the Plant, he was struck by a crane cable, and suffered permanent injuries as a result.  (See First-Party Compl.)  He asserts causes of action for negligence and violations of New York Labor Law.  (See id.)  In October 2009, Brooklyn commenced a third-party action in conjunction with the causes of action against it.  In its third-party complaint, Brooklyn asserts claims against Deltak for (1) common law indemnity, (2) contractual indemnity, (3) contribution, and (4) breach of contract.  (See Third-Party Complaint, dated October, 9, 2009 ("Third-Party Compl.").)  On November 20, 2009, Deltak removed the case to this court.

C. Bankruptcy Proceedings

On September 28, 2006, Deltak filed for Chapter 11 bankruptcy in the United States Bankruptcy Court, District of Delaware.  (See Colameo Aff., Ex. F.)  Deltak was one of eleven affiliated debtors (the "Debtors") involved in consolidated proceedings.  (See id., Ex. G.)  On October 31, 2007, the Debtors filed a First Amended Joint Chapter 11 Plan of Reorganization For Global Power Equipment Group Inc. and Its Affiliated Debtors (the "Reorganization Plan").  (Id. ¶ 10; see also id., Ex. G.)  The Debtors subsequently arranged for the Confirmation Hearing Notice to be published in the Wall Street Journal (national edition), New York Times (national edition), and Tulsa World on November 20, 2007.  (Id., Ex. H ¶ G(vii).)  On December 21, 2007, the Honorable Brendan L. Shannon, United States Bankruptcy Judge, issued an order confirming the Reorganization Plan.  (Id., Ex. H.)

Deltak presently moves to dismiss the third-party complaint on the ground that Brooklyn's claims are barred pursuant to the Reorganization Plan and certain provisions of the United States Bankruptcy Code.

DISCUSSION

-3-

A. <u>Motion to Dismiss Standard</u>

In considering a motion to dismiss under Rule 12(b)(6), the court must "accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." <u>Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.</u>, 517 F.3d 104, 115 (2d Cir. 2008) (quoting <u>Gorman v. Consol. Edison Corp.</u>, 488 F.3d 586, 591–92 (2d Cir. 2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2006)). However, a well-pleaded complaint may survive a motion to dismiss even where "it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." <u>Twombly</u>, 550 U.S. at 556 (citation and internal quotation marks omitted).

In this case, Deltak argues that Brooklyn's third-party complaint does not state a plausible cause of action because the Reorganization Plan bars any claims against Deltak that came into existence before the effective date of the Reorganization Plan. On the other hand, Brooklyn contends that its complaint states a claim to relief that is plausible because whether it was a known creditor (and thus was entitled to receive actual notice of the bankruptcy proceedings before discharge) is a question of fact for which discovery is required.

B. <u>Bankruptcy Discharge</u>

"Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a [reorganization] plan . . . discharges the debtor from any debt that arose before the date of such confirmation . . . ." 11 U.S.C. § 1141(d)(1)(A). In addition, section 524(a) of the Bankruptcy Code provides that:

-4-

> A discharge in a case under this title . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . . .

11 U.S.C. § 524(a)(2); see also Daewoo Int'l (Am.) Corp. Creditor Trust v. SSTS Am., No. 02 Civ. 9629, 2003 WL 21355214, at *3 (S.D.N.Y. June 11, 2003) ("As a general matter, a debtor's plan of reorganization, once confirmed, binds the debtor and all creditors, whether or not a creditor has accepted the plan." (citing 11 U.S.C. § 1141(a)).)

"However, discharge under the Bankruptcy Code presumes that all creditors bound by the plan have been given notice sufficient to satisfy due process." Daewoo Int'l, 2003 WL 21355214, at *3 (citation omitted). Due process is met if notice is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) (citations omitted).[2] "When a creditor is unknown to the debtor, publication notice of the claims bar date may satisfy the requirements of due process." In re U.S.H. Corp. of N.Y., 223 B.R. 654, 658 (Bankr. S.D.N.Y. 1998) (citing Mullane, 339 U.S. at 317–18). "However, if a creditor is known to the debtor, notice by publication is not constitutionally reasonable, and actual notice of the relevant bar dates must be afforded to the creditor." Id. (citing City of N.Y. v. N.Y., N.H. & H.R. Co., 344 U.S. 293, 296 (1953)). Under such circumstances, if actual notice is not afforded, the known creditor's claims cannot be

---

[2] Although Mullane involved the notice that beneficiaries are due from a trustee of a common trust fund upon judicial settlement of accounts, courts have interpreted the case to set the standard for notice required under the Due Process Clause in Chapter 11 bar date cases. See, e.g., In re R.H. Macy & Co., 161 B.R. 355, 359 (Bankr. S.D.N.Y. 1993).

discharged.  Id. at 659 (citation omitted).

        C. Known versus Unknown

        The parties' principal dispute is over whether there is a question of fact concerning Brooklyn's status as a known or unknown creditor.  "[A] 'known' creditor is one whose identity is either known or 'reasonably ascertainable by the debtor.'"  Id. (quoting Tulsa Prof'l Collection Serv., Inc. v. Pope, 485 U.S. 478, 490 (1988)).  A creditor's identity is "'reasonably ascertainable' if that creditor can be identified through 'reasonably diligent efforts.'"  Id. (quoting Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 798 (1983)).  In other words, a "known creditor or claim arises from facts that would alert a reasonable debtor, based on a careful examination of its own books and records, to the possibility that a claim might reasonably be filed against it by a particular individual or entity." Castleman v. Liquidating Trustee, No. 6:06-CV-1077, 2007 WL 2492792, at *4 (N.D.N.Y. Aug. 28, 2007) (quoting In re J.A. Jones, Inc., 492 F.3d 242, 251 (4th Cir. 2007)); see also In re Drexel Burnham Lambert Grp. Inc., 151 B.R. 674, 681 (Bankr. S.D.N.Y. 1993) ("A known claim arises from facts that would alert the reasonable debtor to the possibility that a claim might reasonably be filed against it.").

        Here, Deltak argues that at the time of discharge Brooklyn was an unknown creditor as a matter of law.  (Memorandum of Law, of Deltak Construction Services, Inc., dated July 20, 2010 ("Deltak's Mem."), at 10–11.)  It contends that the indemnity agreement only created "some sort of hypothetical claim or a claim in the future" (Tr. at 4) that could not have been triggered before the Reorganization Plan went into effect because Evans did not file a lawsuit or make a claim against Brooklyn before that time.  (See id. at 3–4.)  Moreover, Deltak states that at the time of discharge, it had no actual knowledge of Evans's accident or any

-6-

possible claims he or Brooklyn might have related to it; it supports this statement with an affidavit from Darrell Holliday ("Holliday"), Risk Manager of Global Power Equipment Group ("Global"), Deltak's former parent company.[3]  (See Affidavit of Darrell Holliday, sworn to Feb. 13, 2012 ("Holliday Aff.").)

Deltak has failed to meet its burden of demonstrating that the third-party complaint is legally insufficient.  As a threshold matter, the court disagrees with Deltak's contention that there is no factual scenario short of Evans' filing a lawsuit against Brooklyn that could have alerted Deltak to the possibility that Brooklyn might reasonably file a claim against it.[4]  In addition, Deltak's reliance on Daewoo Int'l (Am.) v. SSTS Am., No. 02 Civ. 9629, 2003 WL 21355214 (S.D.N.Y. June 11, 2003), and DePippo v. Kmart Corp., 335 B.R. 290 (Bankr. S.D.N.Y. 2005), is misplaced because both of those cases involved summary judgment motions following a period of discovery.[5]  Finally, Holliday's affidavit insufficiently addresses the facts

_____

[3] Holliday avers that Deltak first learned of Evans's accident on November 17, 2009 and did not know of any claims or demands made in relation to it until that time.  (See generally Holliday Aff.)

[4] In making this argument, Deltak relies on language from U.S.H. Corp. defining an unknown creditor as "one whose 'interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor].'"  223 B.R. at 659 (quoting Mullane, 339 U.S. at 317).  Deltak fails to cite any cases (and the court is aware of none) in which courts have used this analysis, rather than simply looking at whether a review of books and records would alert the debtor to the possibility that a claim might be filed.  In addition, depending on the actual facts, it is not outside the realm of possibility that Deltak was alerted to the chance that Brooklyn would file a claim against it during bankruptcy proceedings.  For example, Brooklyn could have informed it of a demand that Evans made of it.

[5] In fact, in this case Brooklyn contends that a discovery period is necessary precisely because "all the information necessary to determine whether Deltak had reason to identify Brooklyn as a potential creditor, and the efforts they made in this regard, are within the sole

(continued...)

necessary to determine whether Deltak was a known creditor.  For example, Holliday does not outline either what records he searched to come to his conclusions or the procedure in which Deltak actually engaged when determining who its known creditors were.[6]  As a result, judgment cannot be granted as a matter of law before Brooklyn is provided with discovery on the knowledge Deltak actually had of Evans's accident or any claims relating to it, as well as of the steps that Deltak took to determine that Brooklyn was not a potential known creditor.

While it is far from certain that Deltak had knowledge that would have alerted it to the possibility that a claim might reasonably be filed against it, discovery is required to foreclose this possibility.  As a result, I recommend that Deltak's motion be denied and that Brooklyn be granted the limited discovery it requests—evidence of the information Deltak had in its possession between the time of Evans's accident and the time of the bankruptcy discharge proceedings, as well as what (if any) steps Deltak took to determine that Brooklyn was not a potential known creditor.[7]  (See Tr. at 9, 25 (requesting this discovery).)

---

[5](...continued)
possession of Deltak at this time."  (Affirmation of Richard J. Freire, Esq., dated Sept. 13, 2010 (Freire Aff.), ¶ 7.)  Deltak's comparison to Depippo is also inapt because the plaintiff's purported claim in that case sounded in tort rather than in a preexisting contract as here.  See generally Depippo, 335 B.R. 290.

[6] Holliday began working at Global after both Evans's accident and the entirety of the bankruptcy proceedings and presumably does not have first-hand knowledge of Deltak's practices and procedures at that time.

[7] In its memorandum of law, Brooklyn also argues that even if it was an unknown creditor at the time of the bankruptcy proceedings, the notice that Deltak provided to its unknown creditors may not have been constitutionally sufficient.  (See Freire Aff. ¶¶ 9, 10.)  Because it is too early to determine whether Brooklyn was a known creditor, it is unnecessary to address this issue.  It is bears noting, however, that courts have uniformly held that service in national newspapers is sufficient in such circumstances.  See, e.g., U.S.H. Corp. of N.Y., 223 B.R. at

(continued...)

CONCLUSION

For the foregoing reasons, I respectfully recommend that Deltak's motion to dismiss be denied and that Brooklyn be granted limited discovery as to what (if any) information Deltak had in its possession between the time of Evans's accident and the time of the bankruptcy discharge proceedings, as well as what (if any) steps Deltak took to determine that Brooklyn was not a potential known creditor.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Dearie and to my chambers, within fourteen (14) days.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Respectfully submitted,

_____/s/_____
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
        May 16, 2012

---

[7](...continued)
658–659 (collecting cases in which notice publication in national newspapers and/or papers of general circulation in locations where the debtor is conducting business was found to be sufficient.)